Fahey, Elizabeth M., J.

INTRODUCTION

This matter is before the court on motion of the plaintiffs, Francine Ross, as Executrix of the Estate of Stanley Ross and Francine Ross, Individually (hereinafter “Plaintiffs”) to dismiss defendants, Continental Resources, Inc. and Continental Leasing Co., Inc.’s (hereinafter “Defendants”) appeal pursuant to Massachusetts Rule of Appellate Procedure 10(c). After hearing and careful consideration and review of the parties’ arguments, memoranda and submissions, the plaintiffs’ motion is ALLOWED.

BACKGROUND

The plaintiffs initially filed their lawsuit seeking a declaratory judgment concerning the enforceability of defendants’ mortgage on the plaintiffs’ home. The defendants then answered and asserted counterclaims that Dr. Stanley Ross (“Ross”) is obligated, pursuant to his personal guarantee of Docunet’s obligations, to pay off Docunet’s balance due. The plaintiffs then amended their complaint to also allege that the defendants, being aware either that no money was owed by the plaintiffs or that the defendants had no way of ascertaining the correct amount of money owed, filed the counterclaims, and refused to discharge their mortgage on the plaintiffs’ home, both of which the plaintiffs claimed intentionally inflicted emotional distress on the plaintiffs and were unfair and deceptive acts. The plaintiffs also claimed the defendants intentionally interfered with an advantageous relationship, i.e., the plaintiffs’ ability to sell their home. By way of a First Amended Complaint for Declaratory Judgment, the plaintiffs also alleged breach of contract, fraud and fraudulent inducement.
On or about May 31, 2001, the defendants filed a Motion for a Preliminary Injunction seeking to enjoin the plaintiffs from interfering with the defendants’ intended foreclosure on the plaintiffs’ properly as a result of Ross’ alleged default under the Settlement Agreement with the defendants. The defendants had obtained in 1999 a judgment from the Land Court permitting the scheduling of the foreclosure sale. To that motion, the defendants attached an “Account Annexed” as Exhibit B, indicating that Ross then owed $15,924.08, plus interest at 12 percent for nine years of $17,198, for a total amount in default of $33,222.15.
The Land Court denied the motion. Thereafter, the plaintiffs moved for a speedy trial and, on the eve of trial, the parties agreed to escrow $50,000 in exchange for the defendants’ discharge of the mortgage on the plaintiffs’ home. On July 15, 2002, this court entered judgment for the defendants on the plaintiffs’ claims for declaratory judgment (Count I), breach of contract (Count III), injunctive relief (Count IV), fraud (Count V), interference with advantageous relations (Count VI), fraudulent inducement (Count VII) and intentional infliction of emotional distress (Count VIII). This court also entered judgment for the plaintiffs on Count II, the c. 93A claim. On the defendants’ counterclaims, this court entered judgment for the defendants on Count I, breach of the Settlement Agreement, and Count II, account annexed, in the amount of $7,500.00 with interest from June 27, 1990. Judgment entered for the plaintiffs on Count III of defendants’ counterclaim for Indemnification.
On or about July 29, 2002, the plaintiffs applied for damages on Count II and attorneys fees. This court awarded damages for the plaintiffs in the amount of *76 $32,321.88 with interest and attorneys fees in the amount of $57,696.31.
On or about August 23, 2002, the plaintiffs moved for reconsideration of the July 15, 2002 judgment in favor of the defendants. After hearing, this court vacated so much of the July 15,2002judgment awarding $7,500.00 to the defendants on Counts I and II of their counterclaim, determining that the initial judgment was not supported by the facts. The amount of the initial judgment of $7,500.00 had been based on a bankruptcy filing by Mr. Ross that he owed the defendants $7,500.00. The basis of the plaintiffs’ motion to reconsider and vacate that judgment was that the defendants had, during trial, offered only page one of that bankruptcy filing but intentionally omitted the filing of the second page of that document in which Mr. Ross indicated that he had paid Docunet the monies he had owed it. This court entered a subsequent judgment for the defendants in the amount of $1.00 with interest from June 27, 1990. Judgment entered on July 8, 2003 that the plaintiffs recover treble damages in the sum of $32,321.88 plus interest[1] on Count II and attorneys fees in the sum of $57,696.31. Accordingly, this court dismissed all other counts of the complaint and the defendants were allowed to recover the sum of $1.26.[2]
On or about July 11, 2003, the defendants filed a Notice of Appeal from all findings and rulings under the July 8, 2003 judgment and order. Thereafter, on or about July 28, 2003, the defendants filed a certification dated July 24, 2003, which provided that the defendants had “ordered from the Court Reporters a transcript of all ‘on the record’ proceedings in this matter, including all evidentiary and non-evidentiary proceedings.” In addition, the defendants attached letters forwarded to court reporters Robert Jacques and John M. Lynch, Jr., dated July 15, 2003. Defendants’ letter to Mr. Jacques stated that the defendants were “writing to make arrangements to order the transcript of the trial,” which took place in August and September 2001 and requested that Mr. Jacques contact defense counsel “to advise what deposit is required to arrange for a preparation of the transcript.” Defendants’ letter to Mr. Lynch stated that the defendants were “writing to order a transcript” of a non-evidentiaiy hearing held on December 19, 2002 and requested that Mr. Lynch contact defense counsel “to advise what is required in way of a deposit in order to begin preparation of the transcript.”
The docket does not reflect any activity between the July 28, 2003 filing of the defendants’ certification and June 16, 2005 when this court treated a letter from the plaintiff dated June 3, 2005 as a motion to vacate the agreement to escrow funds and to expedite assembling of the transcript and the record.[3]
On July 19, 2005, this court ordered counsel to provide an affidavit within 14 days, detailing their efforts to obtain the trial transcript from the court reporters. On or about July 29, 2005, the defendants complied with the court order and provided two affidavits detailing the defendants’ efforts to obtain the trial transcript. Specifically, Attorney Mark W. Comer’s affidavit indicates that the defendants first contacted the court reporters by telephone on July 14, 2003 concerning ordering the transcript and subsequently sent letters to Mr. Jacques and Mr. Lynch on July 15, 2003 as outlined above. In addition, Attorney Comer’s affidavit states that the defendants’ first attempt to follow up with Mr. Jacques and Mr. Lynch after the July 15, 2003 letters occurred by telephone on January 9, 2004, with a second telephone call to Mr. Jacques and Mr. Lynch on January 26, 2004. Attached to Attorney Corner’s affidavit were two additional letters that were forwarded to Mr. Jacques and Mr. Lynch. Defendants’ letter, dated February 5, 2004 to Mr. Jacques stated the defendants “wish to make arrangements to order the transcript of the trial,” which took place in August and September 2001 and requested that Mr. Jacques forward an invoice to the defendants or contact defense counsel by telephone concerning the cost of the transcript. Defendants’ letter, dated February 5, 2004 to Mr. Lynch stated the defendants “wish to order a transcript” of a non-evidentiary hearing held on December 19, 2002 and requested that Mr. Lynch contact defense counsel “to advise what is required in way of a deposit in order to begin preparation of the transcript.” Attorney Corner’s affidavit also states that his paralegal had follow-up conversations with Mr. Jacques and Mr. Lynch on February 11, 2004 and February 13, 2004.[4] The affidavits do not reflect any more efforts to follow up with the court reporters until May 2005.
The defendants’ second affidavit, provided by defense counsel’s paralegal, Mark S. Samson, indicates that he left a message at the Middlesex Superior Court regarding obtaining the transcript on May 16, 2005. Mr. Samson states that upon return of this message, he was directed to contact court reporter Robert Jacques. Mr. Samson also contends that he spoke with Mr. Jacques on May 26, 2005 advising him of the defendants’ request for the transcript and that Mr. Jacques advised him “in general terms” of the costs and stated, “it would take multiple months for him to transcribe all of the proceedings requested.” In addition, Mr. Samson’s affidavit indicates that on May 31, 2005 he left a message for Mr. Jacques “requesting each and every page of transcripts in the subject matter.” Mr. Samson also states that during a telephone conversation on July 21, 2005, Mr. Jacques informed him that the preparation of the transcript would require a $5,400.00 deposit and provided him with his mailing address. As stated in Attorney Corner’s affidavit, the defendants forwarded a check in the amount of $5,400.00 to Mr. Jacques by letter dated July 25, 2005. Lastly, Mr. Samson’s affidavit indicates that, after multiple attempts, he has been unable to reach Mr. Lynch regarding the status of the *77 preparation of Mr. Lynch’s portion of the transcript. As of the September 9, 2005 hearing, the defendants had not paid Mr. Lynch for the transcript; Mr. Lynch had not by then advised the defendants with regard to the necessary deposit. A letter submitted by defendants’ counsel after the hearing indicates that a deposit of $100 was provided to court reporter Lynch by letter dated September 12,2005. Defendants’ counsel reported in open court that his office had extensive delay in even locating Mr. Lynch, although he knew Mr. Lynch worked as a court reporter in Middlesex (Cambridge) and in 2005 learned he transferred to Lawrence.

DISCUSSION I. STANDARD OF REVIEW

Massachusetts Rule of Appellate Procedure 10(c)[5] authorizes a judge of a lower court to dismiss appeals, on a finding of inexcusable neglect for failure to comply with Mass.R.A.P. 9(c).[6] Excusable neglect calls for “unique or extraordinary circumstances.” Mailer v. Mailer, 387 Mass. 401, 406 (1982). However, Rule 10(c) further states that compliance with Rule 9(c) is timely if the appellant has cured the noncompliance prior to the lower court’s hearing.

II. COMPLIANCE WITH MASSACHUSETTS RULES OF APPELLATE PROCEDURE 8(b)(1) AND 9(c)(2)

Mass.R.A.P. 8(b)(1) provides the requirements an appellant must comply with in ordering the transcript of a lower court proceeding after filing a notice of appeal in a civil case.[7]
In this case, the defendants timely filed a notice of appeal on July 11,2003. Defendants’ first contact with the court reporters to order the transcript was by telephone on July 14, 2003. Subsequently, on July 15, 2003, the defendants forwarded letters to court reporters Robert Jacques and John M. Lynch, Jr. Upon review of the July 15, 2003 letter to Mr. Jacques, this court is not satisfied that it is equivalent to ordering the transcript as required under the rule.[8] Upon review of the July 15, 2003 letter to Mr. Lynch, although this court is satisfied that the letter to Mr. Lynch does constitute an ordering of the transcript, this court does not find that the defendants then made satisfactory arrangements with Mr. Lynch for payment of the cost of the transcript.
Rule 8(b)(1) requires that an appellant “make satisfactory arrangements with the court reporter for payment of the cost of the transcript” at the time of ordering the transcript. In Pandey v. Graham, Jr., 61 Mass.App.Ct. 1103, 807 N.E.2d 253, 2004 WL 951324,[9] the Appeals Court stated that this provision was included in the rule to make certain that an appellant’s order for the transcript is not an “empty gesture.” In this case, the defendants’ July 15, 2003 letter to Mr. Jacques simply requested that Mr. Jacques contact defense counsel “to advise what deposit is required to arrange for a preparation of the transcript.” Similarly, the defendants’ July 15, 2003 letter to Mr. Lynch only requested that Mr. Lynch contact defense counsel “to advise what is required in way of a deposit in order to begin preparation of the transcript.” The defendants’ course of action does not constitute making satisfactoiy arrangements to pay for the transcript but are merely a request that the court reporters contact the defendants to make arrangements concerning the cost of the transcript. Therefore, this court finds that the defendants’ so-called “order” represents the “empty gesture” that the Appeals Court referenced in Pandey.
In addition, over two years after the defendants filed the notice of appeal, the transcript still has not been delivered to this court’s clerk as required under Rule 9(c)(2). Consequently, this court ordered counsel to provide an affidavit within 14 days, detailing their efforts to obtain the trial transcript from the court reporters. In response, defendants filed two affidavits on July 29, 2005. Based upon the information provided in these affidavits, this court finds that the defendants were not even close to diligent in their efforts to obtain the transcripts, waiting months and even more than a year to follow up with the court reporters.[10] While this court recognizes that the defendants had difficulty contacting the court reporters, “the principal function of Rule 9(c)(2) is to put the responsibility for expediting the appeal squarely on the appellant.” Mailer, 387 Mass. at 407 citing Vyskocil v. Vyskocil, 376 Mass. 137, 139 (1978). Therefore, the defendants were required to use all means necessary to obtain the transcripts. This court finds that the defendants did not do so. The defendants did not continuously, or even frequently, try to contact the court reporters. Instead, they merely, as to each reporter, after the initial telephone call and letter, forwarded a single letter and made two follow-up telephone calls in January and February 2004. The defendants’ subsequent follow-up telephone calls were not until May 16, 2005. In addition, the defendants never traveled to the courthouse to speak with the court reporters personally nor enlisted the assistance of the court in obtaining the transcript. Accordingly, this court concludes that the defendants failed to comply with the requirements of Rule 8(b)(1).
In order for this court to dismiss an appeal, as requested by the plaintiffs, the rules of appellate procedure require a finding that the appellant failed to comply with Mass.R.A.P. 9(c)(2). Although the defendants attempted to comply with this rule by filing a certification with this court stating that they had ordered the transcripts, the certification was untimely for the reasons stated above, this court finds that defendants had not complied with Rule 8(b)(1) with regard to ordering the transcript at the time of their certification.[11] Consequently, this court concludes the defendants did not comply with Rule 9(c)(2).
*78 In deciding whether the ultimate sanction of dismissal, as requested by plaintiffs, is necessary, Mass.R.A.P. 10(c) requires that this court evaluate whether the appellant’s failure to comply with Rule 9(c)(2) was based on inexcusable neglect. A court’s excuse of an appellant’s neglect to comply with Rule 9(c)(2) requires “unique or extraordinary circumstances.” Mailer, 387 Mass. at 406. In addition, “the concept of excusable neglect does not embrace ‘[a] flat mistake of counsel about the meaning of a statute or rule’ or other ‘garden variety oversights].’ ” Id., quoting Goldstein v. Barron, 382 Mass. 181, 186 (1980). This court finds that the defendants’ neglect[12] in this case does not even come close to constituting a unique or extraordinary circumstance. The concept of “excusable neglect” does not allow an appellant, who has never actually made arrangements personally with a reporter for payment, to wait six months initially and then more than a year to follow up with a court reporter to order a transcript and make arrangements for payment of the cost of the same. Accordingly, this court concludes that the defendants’ action and lack of action constitutes “inexcusable neglect” in failing to comply with Rule 9(c)(2).
Finally, Rule 10(c) deems an appellant’s compliance with Rule 9(c) timely if the appellant cures the noncompliance by the time of the hearing. By the date of the hearings on this motion, on September 6, 2005 and again on September 9, 2005, the defendants had, only recently, made payment to Mr. Jacques for his portion of the transcript but had not received a copy of the transcript. By the dates of these two hearings, the defendants had not yet made payment to Mr. Lynch for his portion of the transcript. Consequently, this court concludes that the defendants had not fully cured their noncompliance as of the last hearing date, September 9, 2005.

ORDER

Based upon the foregoing, the plaintiffs’ motion to dismiss defendants’ appeal pursuant to Massachusetts Rule of Appellate Procedure 10(c) is ALLOWED.

 Interest was calculated on $10,773.96 from April 23, 2001 in the sum of $2,855.09.

 Interest was calculated on $1.00 from June 27, 1990 in the sum of $0.26.

 The letter was sent to the court personally by the plaintiff unbeknownst to her counsel.

 It is unclear as to whether these telephone calls resulted in an actual conversation, the leaving of a message or no contact at all with the court reporters as this information was simply taken from the defense counsel’s billing records.

 Mass.R.A.P. 10(c) provides “[i]f any appellant in a civil case shall fail to comply with Rule 9(c) or Rule 10(a)(1) or (3), the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect; otherwise, the court shall enlarge the appellant’s time for taking the required action. If, prior to the lower court’s hearing such motion for noncompliance with Rule 9(c), the appellant shall have cured the noncompliance, the appellant’s compliance shall be deemed timely.”

 Mass.R.A.P. 9(c)(2) provides in pertinent part “. . . each appellant in a civil case shall, within ten days after filing a notice of appeal, deliver to the clerk of the lower court either a transcript of those portions of the transcript of the lower court proceedings which the appellant deems necessary for determination of the appeal, (ii) a signed statement certifying that the appellant has ordered such portions from the court reporter, or (iii) a signed statement certifying that the appellant has not ordered and does not intend to order the transcript or any portion thereof. Upon receiving the transcript, the appellant in a civil case shall forthwith deliver it to the clerk of the lower court.”

 Mass.R.A.P. 8(b)(1) provides in pertinent part “[w]ithin ten days after filing the notice of appeal the appellant shall order from the court reporter a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record ... At the time of ordering, a party shall make satisfactory arrangements with the court reporter for payment of the cost of the transcript.”

 The letter to Mr. Jacques simply stated the defendants “wish to make arrangements to order the transcript of the trial.”

 This court cites Pandey v. Graham, an unpublished opinion, given the lack of case law, published or not, dealing with this issue.

 Attorney Corner’s affidavit indicates that the defendants’ efforts included follow-up telephone calls on January 9, 2004 and January 26, 2004; a second letter dated February 5, 2004 stating the same requests as the July 15, 2003 letters; and two additional follow-up telephone calls on February 11, 2004 and February 13, 2004.
The affidavit provided by defense counsel’s paralegal, Mark S. Samson, states that the next follow-up telephone call did not occur until May 16, 2005. Mr. Samson also indicated in his affidavit that he spoke with Mr. Jacques on May 26, 2005, at which time Mr. Jacques advised him in “general terms” of the costs and that “it would take multiple months for him to transcribe all of the proceedings requested.” In addition, Mr. Samson’s affidavit also stated that he telephoned Mr. Jacques on May 31, 2005 and again on July 21, 2005, when Mr. Jacques informed him of the cost of the transcript. On July 25, 2005, the defendants forwarded a check to Mr. Jacques.
Both Attorney Corner’s and Mr. Samson’s affidavits stated that the defendants were unable to reach Mr. Lynch regarding the status of the preparation of his portion of the transcript.

 On July 28, 2003, seventeen days after filing the notice of appeal, the defendants filed a certification dated July 24, 2003 stating that they had “ordered from the Court Reporters a transcript of all ‘on the record’ proceedings in this matter, including all evidentiary and nonevidentiaiy proceedings.” Attached to this certification were copies of the letters forwarded to Mr. Jacques and Mr. Lynch dated July 15, 2003.

 During the September 6, 2005 hearing, defendants’ counsel stated that he is familiar with appellate procedure and has, in the past, sought dismissal of appeals where the transcript was not timely ordered and/or obtained. That he has this personal knowledge makes the “neglect,” the real failure to have any personal contact with the court reporters until, at the earliest, May 2005, even more disturbing.